**Mary Frances HORUTZ, Appellant,**

v.

**Michael HORUTZ, Jr., Appellee.**

No. 2615.

Supreme Court of Alaska.

Feb. 28, 1977.

Linda L. Walton, Rice, Hoppner & Hedland, Fairbanks, for appellant.

Robert B. Downes, Fairbanks, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

RABINOWITZ, Justice.

This is an appeal from the custody provisions of a divorce decree. In its decree the superior court awarded custody of the parties' minor son Jason (then approximately two years of age) to appellee Michael Horutz with ". . . Mary Frances Horutz having visitation rights as follows: One-half (½) day each week, provided the child is returned to the Plaintiff before bedtime."[1]

In concluding that Jason's best interests required that he be in the care, custody and control of Michael Horutz, the trial court specifically found that

> . . . Mary Frances Horutz, has been, and is, a person of bad character, and has been, and is, a poor and unfit mother; and she has established a pattern of life which is inimical to the proper rearing of children.[2]

On the other hand, as to Jason's father, the superior court found that:

> While . . . Michael Horutz, Jr. has some faults, his pattern of life is generally good, and I find him to be a hard worker, thrifty, a good and moral

1. The parties were able to enter into a property settlement agreement which was incorporated into the decree. The superior court's decree further provided that Mary Frances Horutz was to pay the sum of $50 per month for "the support, maintenance and education" of the minor child until he reached the age of majority or was "sooner emancipated."

2. Additionally, the court entered findings regarding the manner in which appellant had raised her then 17-year-old daughter who was the child of a previous marriage. In part, in its findings relating to this subject, the court said: "The Defendant's other child, Vickie, has been virtually ruined by various aspects of the Defendant's pattern of life . . . .." In its findings the court further stated:

> The defendant is about to enter into a fifth marriage, which has, statistically, little chance of succeeding. Such a failure of this fifth marriage, could and would be contrary to the welfare of both of the Defendant's children.

man, and a fit father for his son, Jason
. . ..

In this appeal appellant has advanced 13 separate specifications of error, the most significant of which address the superior court's determination of appellant's unfitness to have custody of the minor child and the asserted failure of the superior court to conduct a fair and impartial trial.

On previous occasions we have alluded to our conclusion that "[c]hild custody determinations are among the most difficult in the law."[3] For "[a] child may often carry with him for the rest of his life— more than half a century—the effects of a court's custody award."[4] In carrying out the grave responsibility granted them, our trial courts are vested with broad discretion in determining where custody should be placed.[5] At the appellate level the trial court's resolution of custody issues will be disturbed only if this court is convinced that the record shows an abuse of discretion, or if controlling findings of fact are clearly erroneous.[6]

In sifting and weighing the often emotionally charged and diametrically opposed testimony of the parties, our decisions, and Alaska's positive law, require that the trial court's resolution of custody issues be determined by the paramount criterion of the best interests of the child. For "[t]he best interests of the parent, or detriment to the parent, are not the test."[7] In this regard AS 09.55.205 provides that in deciding custody questions, the trial court should be guided by the following considerations:

(1) by what appears to be for the best interests of the child and if the child is of a sufficient age and intelligence to form a preference, the court may consider that preference in determining the question;

(2) as between parents adversely claiming the custody neither parent is entitled to it as of right.[8]

When called upon to decide whether the trial court abused its discretion in applying the best interests test, we must at times determine whether the trial court assigned "too great a weight to some factors while ignoring others, perhaps by elevating the interests of one of the parties to the dispute above that of the child, perhaps by making a clearly erroneous finding with respect to some material issue."[9] With these established precepts in mind, the evidentiary mix from which the superior court fashioned its oral decision and formal findings of fact, conclusions of law and decree will now be outlined.

Concerning what the record shows of the respective character of the parties, two rather salient points can be made. Much of the testimony which was adduced by the parties involves marital trivia and fails to focus on the real issues which needed to be addressed, namely, what custody disposition was in the best interests of the parties' minor child Jason and the relative fitness of Michael and Mary as custodial parent. A second significant aspect of the record we have is that due to mechanical malfunctions of courtroom recording equipment, approxi-

3. *Horton v. Horton,* 519 P.2d 1131, 1132 (Alaska 1974), reiterated in *Lacy v. Lacy,* 553 P.2d 928, 929 (Alaska 1976).

4. *Veazey v. Veazey,* 560 P.2d 382, Opinion No. 1381, (Alaska 1977).

5. *Carle v. Carle,* 503 P.2d 1050, 1052 (Alaska 1972).

6. *Id.* 503 P.2d at 1052. *See also King v. King,* 477 P.2d 356, 357 (Alaska 1970); *Sheridan v. Sheridan,* 466 P.2d 821, 824 (Alaska 1970).

7. *Veazey v. Veazey,* 560 P.2d 382, Opinion No. 1381, (Alaska 1977).

8. In *Carle v. Carle,* 503 P.2d 1050, 1052, n. 4 (Alaska 1972), we observed that "The legislative standard parallels the standard articulated by this court." *Lacy v. Lacy,* 443 P.2d 928, 931 (Alaska 1976); *King v. King,* 477 P.2d 356 (Alaska 1970); *Sheridan v. Sheridan,* 466 P.2d 821 (Alaska 1970); *Harding v. Harding,* 377 P.2d 378 (Alaska 1962); *Rhodes v. Rhodes,* 370 P.2d 902 (Alaska 1962).

9. *Lacy v. Lacy,* 553 P.2d 928, 930 (Alaska 1976); *Horton v. Horton,* 519 P.2d 1131, 1132 (Alaska 1974).

mately one hour of the testimony of Michael Horutz and approximately one hour of the testimony of Mary Horutz has been lost.[10]

The record we do have reflects the following: Appellant Mary Horutz, at the time of trial, had been married four times. While still married to her third husband, she and appellant Michael Horutz began cohabitating and lived together for approximately six months before they were married. Mary had one child, Vickie, from a previous marriage.[11] Mary and Michael were married in late 1971, this was the first marriage for Michael. Jason was born in August of 1974 and approximately one year later Mary and Michael separated. They were granted a divorce by the superior court in September 1974.

During the time they lived together, Michael, for the most part, worked days either as a bartender or as an ironworker, and Mary worked nights as a cocktail waitress. Their differing schedules led to problems. The parties had arguments and fights which Mary contended caused her to drink more than she otherwise would. It is clear from the record that Mary's daughter,

Vickie, and Michael did not have a satisfactory relationship which led, in part, to Vickie's voluntarily leaving her mother's and Michael's home when she was nearly 16 years old.[12] Mary began an affair with another man before Michael and she separated.[13]

Our overall disposition of this appeal makes it unnecessary to discuss in detail each of the 13 separate specifications of error. We deem it sufficient to concentrate on the superior court's conclusions "[t]hat it is in the best interests of Jason Michael Horutz, the minor child of the parties, that the plaintiff, Michael Horutz, Jr., should have the care, control and custody of said child," and that Mary Horutz should be granted one-half day visitation rights per week. As we have indicated, the major premise for these conclusions was the superior court's underlying findings that Mary was of bad character, a "poor and unfit mother," and had "established a pattern of life which is inimical to the proper rearing of children." A minor premise of the superior court's conclusion was the finding that Mary's child by a previous marriage "has been virtually ruined by various aspects of Mary's pattern of life."[14]

---

10. Civil Rule 75 provides in part that:
   (a) *Record of Proceedings.*
   In all actions and proceedings in the superior court there shall be kept a stenographic or electronic record of the following:
   (1) All proceedings had in open court unless the parties with the approval of the judge shall specifically agree to the contrary; and
   (2) Such other proceedings as the judge may direct, or as may be required by order of the court, or as may be required by any party to the action or proceeding.
   We think it incumbent upon all judges and in-court clerks to attempt to ensure that a complete recording is made of all proceedings required to be recorded.

11. At the time of trial Vickie was 17 years old.

12. The unsatisfactory relationship between Vickie and Michael was partially caused by Vickie's allegations that Michael had come into her bedroom on at least one occasion while she was sleeping, and had touched her breasts. Vickie was 14 years old at the time, and she told her mother about the incidents. Mary

confronted Michael with the charges, and Michael denied Vickie's allegations. The appellant has pointed out that while the trial court made oral findings on this issue indicating that he did not know whether the alleged molestation occurred, the written finding states "the plaintiff did not molest the child, Vickie, as she alleged." On further hearing, the trial court should clarify this issue.

   When she left her mother's and Michael's home, Vickie asked that she be placed in the custody of the Family and Children's Services Division. At the time of trial, she had been residing with a foster family for about one year.

13. Mary testified that she intends to marry this individual.

14. Counsel for appellee submitted proposed findings of fact and conclusions of law which were entered without modification by the superior court. The written finding varies significantly from the trial court's oral decision in this matter. In part, in its oral opinion, the trial court stated:

■ Given the enormously important interest involved here, the significant gaps in the testimony of the two principal witnesses, and the opaqueness of the evidence as it relates to the relative parental fitness of Mary and Michael, we have concluded that the matter should be remanded to the superior court for further proceedings. This is not to say that we have necessarily found the superior court's ultimate determination of custody was erroneous in light of the best interests of the minor child standard, although we do have serious reservations as to whether there is sufficient evidentiary basis for the extremely limited visitation rights which were accorded Mary.

■ On the other hand, our ability to carry out our normal review functions has been seriously handicapped by the absence of a complete record in the case at bar. We are fully cognizant of the limitations of both the parties' emotional and material resources in these matters, as well as the need to conserve judicial resources. Nevertheless, our past decisions have made it

abundantly clear that the focal point of any custody dispute is to reach a custody disposition that is in the child's, not the parent's best interest. It is on this point that our careful review of the partial record we do have leaves us uncertain as to the sufficiency of the evidentiary bases for the trial court's controlling findings concerning Mary's bad character and her unfitness to act as a custodial parent of Jason. For the record is lacking any searching inquiry into Mary and Michael's relative fitness as parents of their minor child. What we find in the record is a great quantum of testimony which concerns conduct of Mary and Michael that is unrelated and lacks relevance to their respective relationships to their minor child, and their ability to accord the child the most meaningful parent-child relationship.[15] More particularly, it strikes us that the trial court might possibly have assigned too great a weight to the respective sexual conduct of the parties without determining what impact such conduct had on the parties parental relationship to Jason.[16] In view of this possibility and the

---

I think the child is ruined as far as parental control is concerned, not necessarily ruined as a good citizen. I think the girl has hopes for a good life, and I think she probably will find it. We all hope so. But I think she's out from under her mother's control, physically and legally.

Another instant of significant divergence between the court's oral decision and the findings which were entered concerns the subject of support. In its oral decision the superior court held, in part, "I'm going to order her to pay $50.00 a month, so long as she is employed, for the support of this child." In its conclusions of law and decree the court provided, "That Defendant, Mary Frances Horutz, should pay to Plaintiff, Michael Horutz, Jr., the sum of $50.00 per month for child support, commencing on the 15th day of June, 1975, and a like sum on the same day of each succeeding month thereafter until the minor child of the parties reaches the age of majority, or is sooner emancipated.

**15.** *Compare* § 402 of the Uniform Marriage and Divorce Act which was approved by the National Conference of Commissioners on Uniform State Laws in 1970. Section 402 provides in part:

The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:

* * * * *

(3) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interest;

* * * * *

(4) the childs adjustment in his home, school and community; and the mental and physical health of all individuals involved.

The court shall not consider conduct of a proposed custodian that does not affect his relationship to the child.

In regard to the last sentence of § 402, the Commissioner's Note states that the sentence changes the law in those states which continue to use fault notions in custody adjudication. There is no reason to encourage parties to spy on each other in order to discover marital (most commonly, sexual) misconduct for use in a custody contest. This provision makes it clear that unless a contestant is able to prove that the parent's behavior in fact affects his relationship to the child (a standard which could seldom be met if the parent's behavior has been circumspect or unknown to the child), evidence of such behavior is irrelevant.

**16.** The trial court accorded great emphasis to the fact that Mary lived in a state of sexual cohabitation without the benefit of marriage. The evidence showed that Mary had in fact

importance of the custody question and the fact that the child's best interests were not independently protected by the appointment of a guardian ad litem, we cannot finalize the decree in this case.[17]

We therefore remand the case for further proceedings not inconsistent with the foregoing. Upon remand, the superior court should appoint a guardian ad litem for the child,[18] and take such additional steps as are deemed appropriate, including the taking of additional testimony on the custody issue. During the pendency of such further proceeding, primary custody is to remain with Michael, with the superior court further empowered to make such interim visitation provisions as it deems appropriate.

The Decree of Divorce as entered in this case is affirmed in its provisions dissolving the bonds of matrimony between Mary and Michael and its approval of the parties' property settlement agreement. The portions of the decree relating to the award of custody, visitation rights and support payments are vacated and remanded for further proceedings not inconsistent with this opinion.[19]

---

lived with Michael before they married and was living with another man towards the end of her marriage with Michael. On the other hand, the trial court observed that when Michael lived in a state of sexual cohabitation, his premarital affair with Mary was ". . . his first and only experience of this sort."

**17.** *Compare Carle v. Carle,* 503 P.2d 1050, 1054–55 (Alaska 1972).

**18.** *Veazey v. Veazey,* 560 P.2d 382, Opinion No. 1381, (Alaska 1977).

**19.** Since the superior court judge who originally heard this matter has retired, the presiding judge of the Fourth Judicial District is to reassign the matter to another sitting superior court judge.