Roger E. HOLL, Appellant,

v.

Constance E. HOLL, Appellee.

Nos. S–3109, S–3178.

Supreme Court of Alaska.

Aug. 16, 1991.

Peter F. Mysing, Kenai, for appellant.

Max F. Gruenberg, Jr., Gruenberg & Clover, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

PER CURIAM.

Roger and Constance Holl were married in 1976. They had three children prior to their divorce in 1986. The issue of custody was bifurcated from divorce and property issues, and tried separately. The custody trial lasted four days, taking place over a nine month period. The trial court found

that "joint custody is not appropriate in this case" and further that "[i]t is in the best interests of the minor children that they be placed in the custody of [Constance], not contingent upon whether she moves [from the Kenai–Soldotna area] or any other factor." Reasonable rights of visitation were found to be appropriate, and a decree was entered accordingly. The trial court denied Roger's motion for reconsideration, but expanded upon its prior findings with respect to factors it considered significant to its custody determination. Roger appealed.

We affirmed the trial court's judgment in part, but remanded "for further findings of fact [the trial court's] decision granting Constance Holl sole custody of the children...." In due course the trial court entered FINDINGS OF FACT ON REMAND. Roger again appeals. We affirm.

As we have often remarked, "[c]hild custody determinations are among the most difficult in the law." *Horton v. Horton*, 519 P.2d 1131, 1132 (Alaska 1974); *see also Horutz v. Horutz*, 560 P.2d 397, 399 (Alaska 1977); *Lacy v. Lacy*, 553 P.2d 928, 929 (Alaska 1976). Trial courts are vested with broad discretion in determining child custody issues. *Julsen v. Julsen*, 741 P.2d 642, 648 (Alaska 1978). We will reverse a trial court's custody determination only if we are convinced that the trial court has abused its broad discretion, or if controlling findings of fact are clearly erroneous. *Id.; Starkweather v. Curritt*, 636 P.2d 1181, 1182 (Alaska 1981); *Horutz*, 560 P.2d at 399.

When reviewing a trial court's findings of fact, we are directed by the principle that "[i]t is primarily the trial court's function to weigh the evidence for the purpose of making findings, and on appeal, deference must be given to the trial court's decision, particularly because of the trial court's advantage in observing the witness." *Bonjour v. Bonjour*, 566 P.2d 667, 669 (Alaska 1977). "We merely determine whether the trial court's finding is supported by the record." *Lone Wolf v. Lone Wolf*, 741 P.2d 1187, 1190 (Alaska 1987) (quoting *Brooks v. Brooks*, 733 P.2d 1044, 1051 (Alaska 1987)).

In its oral findings of fact regarding custody, rendered from the bench at the conclusion of the trial, the trial court said:

But, let me tell you where I am on custody. After reviewing the evidence of the relationship of the parents to each other and the children to their parents, in spite of hearing the positions stated by the parties today, I don't think that joint custody is appropriate for these children and I do think that they should be placed in the custody of their mother and that should not be based on some kind of contingency if they move or don't move kind of thing and that Mr. Holl should continue to have substantial visitation. And, if the parties are able to work it out so that it continues to be one week and one week, that is a certain kind of parental wisdom that they may and have the right to exercise over their children; however, subject to the parents agreeing, which they sound like they actually have reached agreement on equal care of the children, it would be the Court's order that the visitation of the Defendant be the standard weekend, alternating holidays and three or four weeks in the summer kind of visitation and that the Court is not making it a contingent order, it's the order of the Court and if she wishes to grant a greater visitation, that's up to her. I do this because I think that the key for children, as well as having a relationship with both parents which is at the heart of this idea of joint custody and of trying to find wise orders for parenting, I think that the key is reaching some stability for these—children and if you listen to the information that's come to this Court about these children, they need that very, very much and lack it to some substantial degree by virtue of their conduct, behavior and the problems that they've experienced and demonstrate. One of the examples, just in today's testimony if you listen back to it, the children saying, "Mom, can I come home?" I think that that is the kind of, you know, maybe an accidental way of phrasing the testimony, maybe it was a

precise recitation, but I think it's characteristic of the impression that this Court has received about the view of these children toward their experience being in this split relationship and that is that they have a home one place and that they are with dad at another and that's how it is. And, that it's important, I think, for children to have a place. To be constantly buffeted back and forth is not wholesome, no matter how much it may be done, and that equality of time together is not the cross upon which children should be crucified. They need to have stability, a sense of place, along with a meaningful relationship with both parents. And, I think that to the extent this Court must make a finding as to what's in the best interest of the children, it does so in finding that Constance Holl can better parent, meeting the needs for love, affection, daily care and that she can promote and will promote this meaningful relationship with Mr. Holl in spite of the problems that both sides have recognized and about which she has testified as well as Mr. Holl to some extent. So, that's the Court's ruling on custody.

In its ADDITIONAL FACTUAL FINDINGS that accompanied its denial of Roger's motion for reconsideration, the trial court made several findings bearing directly on custody. It noted that it was placing particular emphasis and had scrutinized most carefully the testimony of the parents, much of the testimony of other witnesses being either cumulative or second hand. It had weighed the demeanor and had judged the credibility of the parents. The trial court was impressed with Constance's testimony and demeanor. It found her to be believable and particularly relied on her testimony when it differed from Roger's. It believed that many of the instances of abuse Constance recounted had actually taken place.

The trial court identified incidents of noncooperation by Roger: (a) avoidance of service of process; (b) encumbering his airplane against a standing order; (c) failure to assist Constance in maintaining the family home; (d) denial to Constance of assistance in regard to a sewage problem; (e) failure to provide adequate support for the family; (f) inability to work with Constance unless he was given equal time with the children. The court found specifically that "[Constance] did not willingly enter into any kind of permanent joint custody agreement with [Roger], but her acquiescence was dictated largely out of necessity. She had little choice but to remain in Kenai, because she had few financial resources to move elsewhere, particularly during the pendency of this case."

The court concluded by finding that Constance had a greater capacity and desire to meet the emotional and social needs of the children than did Roger, and "that any benefit in the children's remaining in Kenai/Soldotna [was] outweighed by [the children's] need for a stable environment with [Constance]...."

The trial court's FINDINGS OF FACT ON REMAND, appendix "A" hereto, amplify on its prior oral and written findings and include specific record citations to evidence supporting the amplified findings.

The evidence presented to the trial court is not one-sided. To be sure, Roger presented evidence which was in sharp contrast to that presented by Constance, or which cast her evidence in a light less favorable to her and more favorable to him. Had the trial court chosen to believe Roger, the presumption for shared custody declared by the legislature in the legislative intent found in ch. 88, section 1, SLA 1982, and approved by this court, might require a different result. However, the trial court chose not to believe Roger on critical matters, and set forth its reasons for denying shared custody, as is required of it by AS 25.20.100. Given the evidence in the record, and given the deference due the trial court's findings and the exercise of its discretion, we cannot say that we are left with a definite and firm conviction that the findings are not supported by the evidence or that the trial court abused its broad discretion in awarding sole legal custody to Constance.

The judgment of the trial court is AFFIRMED.

MATTHEWS, J., with whom RABINOWITZ, C.J., joins, dissenting.

## APPENDIX "A"

### FINDINGS OF FACT ON REMAND

This court has been asked to expand upon the findings of fact supporting its ruling that Constance Holl have sole legal custody of the Holl children, rather than ordering "joint [shared] legal custody" of the children. Specifically, the Supreme Court has inquired how "alleged" instances of abuse affected Roger Holl's suitability as a "joint custodian" of the children, and whether post separation conduct tends to support "joint custody."

This court found it proper to bifurcate the physical custody of the children, but not the legal custody. The custodial parent—regardless whether there is a sharing of legal custody—will determine such things as what the children eat and wear, daily responsibilities around the home, curfews, what school the child attends, and the extracurricular activities of the child. Among the matters of significant concern in which both parents ought to be involved include permission to marry before age 16, whether to approve elective surgery, whether to remain in school, what to do after high school, and what to do with the child's property. Of these, permission to marry requires both parents to approve. The other matters generally only require one parent's approval even in a unitary family.

It is seldom that parents exercise these "legal" responsibilities in any family. The rarity of the need to exercise such powers does not diminish the significance of the moments of their exercise, and underscores the importance of them to the child.

Roger was not given joint legal custody based on his past behavior. The only basis for predicting human conduct is prior experience and common sense. When a parent has been domineering, physically and emotionally abusive, disparaging of others, and generally uncooperative unless they got their way, then a court can only conclude that is how they will behave in the future.[1]

Examples of Roger Holl's uncooperative, abusive and disparaging conduct can be found in the record on appeal at transcript pp. 207–12, 214, 240, 245, 246–47, 249, 424–25, 432, 1255–59. Also see, record, at pp. 41–50.

To the extent that physical and emotional abuse and disparagement were demonstrated by Roger Holl, his conduct toward Constance in front of the children taught the children how not to behave toward anyone, much less a family member.

Parental misconduct by Roger Holl in front of the Holl children is described in the appellate record at transcript pp. 207, 424, and 1265. See also, appellate record pp. 41–50, esp. p. 48 [pretrial affidavits were made part of the trial record by stipulation of counsel.]

The lack of spousal support within the marriage, i.e., failure to help maintain the home, the sewage incident, etc., demonstrate a failure to communicate and a destructive self-righteousness. These failures to aid in his children's welfare demonstrate Roger's tendency to let his emotions get in the way of acting in the best interests of the children on fundamental practical aspects of every-day life. This court cannot conclude that such a person should share authority with the primary, day-to-day custodian on matters requiring legal authority.

Roger's post-separation conduct does not lead to a different result. The record reflected that Roger was seeking equal physical and legal custody and did so to the point of discouraging and opposing Constance's plan to move to where she could be employed in her profession. See transcript pp. 448, 1299–1300. This behavior only further demonstrates his unwillingness to accommodate others, a trait which is necessary for effective shared legal custody.

---

1. This court found that Roger Holl physically and emotionally abused Constance Holl. *See* Order on Defendant's Motion for Reconsideration and Additional Factual Findings, November 7, 1988, para. 1. ("The court believes that many of the instances of abuse [Constance] recounted actually took place.")

Parenting inadequacy and inability to co-operate is demonstrated thoughtout the appellate record, including at transcript pp. 72–74, 219–22, 236–37, 436, 450.

Despite the above, Mr. Holl has "standard visitation" of a non-custodial parent in order to promote the children's best interest. This court—and the law—believes that it is important for non-custodial parent to have significant and meaningful relationships with their children, not as a benefit or right of parenthood, but because it is in the interest of children to know their parents.

The legislature has observed that physical custody may not be shared in all cases. It has also stated that, subject to the rubric of the "best interests of the child," that both parents should "have the opportunity to guide and nurture their children." The intention that parents have the opportunity to guide and nurture is being fulfilled when non-custodial parents exercise visitation.

The court has found Roger Holl and Constance Holl to have demonstrated an inability to co-parent, because they cannot cooperate. It has found that Roger Holl can sustain a non-custodial parenting role through "standard" visitation. The court has found that when serious issues requiring the exercise of legal responsibility arise, the duty should reside wholly in the primary custodial parent. The record demonstrates that Roger acts in an uncooperative and abusive manner which can be expected to surface in contentious bickering at the very times when calm and a single voice of reason are most needed. For

these reasons, this court finds that joint legal custody is inappropriate in this case.

Dated this 3 day of August, 1990, at Anchorage, Alaska.

/s/ Peter A. Michalski
PETER A. MICHALSKI
Superior Court Judge

MATTHEWS, Justice, with whom RABINOWITZ, Chief Justice, joins, dissenting.

I believe the trial court abused its discretion in this case; that the court's decision to award sole custody to Constance Holl was based on an impermissible factor;[1] and that the court improperly weighed other factors in making its determination. *See Julsen v. Julsen,* 741 P.2d 642, 649 (Alaska 1987); *McClain v. McClain,* 716 P.2d 381, 384 (Alaska 1986).

In his oral findings of fact, Judge Michalski suggests that the decision not to award shared custody at least partially rested on his opinion that greater stability is achieved for children, in general, when a single parent has custody. *See* Majority Op. at 381. He stated that

it's important, I think, for children to have a place. To be constantly buffeted back and forth is not wholesome, no matter how much it may be done, and that equality of time together is not the cross upon which children should be crucified. They need to have stability, a sense of place, along with a meaningful relationship with both parents.

*Id.* This statement demonstrates a specific bias, contrary to the presumption favoring shared custody,[2] which is sufficient to war-

---

**1.** *See Johnson v. Johnson,* 564 P.2d 71, 76 (Alaska 1977) (tender years doctrine); *Carle v. Carle,* 503 P.2d 1050, 1055 (Alaska 1972) (benefit of assimilation into dominant culture).

**2.** *See* An Act Relating to Child Custody, ch. 88, § 1(a), SLA 1982:

(a) The legislature finds that it is generally desirable to assure a minor child frequent and continuing contact with both parents after the parents have separated or dissolved their marriage and that *it is in the public interest to encourage parents to share the rights and responsibilities of child rearing.* While actual physical custody may not be practical or ap-

propriate in all cases, it is the intent of the legislature that both parents have the opportunity to guide and nurture their child and to meet the needs of the child on an equal footing beyond the considerations of support or actual custody.

*Id.* (emphasis added); *Bell v. Bell,* 794 P.2d 97, 99 (Alaska 1990) (legislative intent "favors joint legal custody, regardless of the physical custody arrangement"). AS 25.20.090(3) requires that the court consider "the stability of the home environment likely to be offered by each parent." Judge Michalski's preference towards single parent custody also runs contrary to this statutory mandate.

rant a remand for reconsideration. *Johnson,* 564 P.2d at 76; *Carle,* 503 P.2d at 1055.

The lack of sufficient evidence that shared custody should not be preferred, however, leads me to believe that we should reverse. The trial court weighed its findings of fact against the recommendation of the court custody investigator, Yeotis, and a record of over two years of successful joint custody which even Constance had found agreeable.[3] Giving proper weight to the presumption in favor of shared custody, the trial court erred by denying shared custody on this record.

The majority lists six "incidents of non-cooperation." Majority Op. at 381. These incidents suggest non-cooperation related to the divorce proceedings, not child rearing. While evidence of non-cooperation that is unrelated to child rearing can be relevant, the degree of relevancy depends upon the inference that such non-cooperation would extend to the welfare of the children.[4] In the case at bar, there is no indication that the parents had failed to cooperate in regard to decisions regarding the children's upbringing. Roger actually exhibited a willingness to defer to Constance on important issues. Yeotis confirmed the ability of the parents to cooperate with regard to the children.

The trial court also mentions, in its Findings of Fact on Remand, a potential danger of emotional and physical abuse by Roger towards his children. If the court was convinced of its conclusions concerning abuse, it would have favored restricting Roger's unsupervised physical custody of the children. Instead, Judge Michalski stated that he would be agreeable to equal physical custody, even though, following the court's reasoning, physical custody of the father could create undue concern for the children's emotional or physical welfare.[5] The court's broad endorsement of physical custody by Roger, demonstrates that the court did not consider there to be an actual threat to the children. Without such a threat, it was clearly erroneous to weigh this factor against Roger.[6]

For the above reasons, I would reverse the custody decree and remand with directions to fashion a joint custody arrangement.

---

3. Constance went on to state that "Roger has—in all fairness, he has spent a lot of time with the boys in this past year and done a lot, and they have adjusted to his home more, and—and we are reaching that point. So, as long as we are in the same community, I like the equal time."

4. *See* AS 25.24.150(d) ("[i]n awarding custody the court may consider only those factors that directly affect the well-being of the child"); *see also In re Moore's Marriage,* 531 P.2d 995, 997 (Colo.1975) (mother living with man to whom she was not married was imposition of courts own standard, and was not conduct relating to the welfare of the children).

5. The court stated that "if the parties are able to work it out so that it continues to be one week and one week, that is a certain kind of parent wisdom that they may have the right to exercise over their children."

6. The record contains only two examples of what allegedly is the use of excessive force against the children. The first was that Roger had used a belt to discipline one of the children. The second, that Roger had pushed one of the children to the ground.

Neither of these examples, taken alone, establishes that Roger is a danger to the children or even that he disciplines them too harshly. Beyond this, the conduct found relevant to the trial court relates more to problems in the spousal relationship than to problems between the father and his children.