**Louise A. MOREL, Appellant,**

**v.**

**Jose M. MOREL, Appellee.**

**No. 5706.**

Supreme Court of Alaska.

July 9, 1982.

Suzanne Weller, Alaska Legal Services Corp., Anchorage, for appellant.

Karla F. Huntington, Anchorage, guardian ad litem.

No appearance for appellee.

Before BURKE, C.J., and RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

This is an appeal brought by Louise Morel from that portion of a divorce decree awarding custody of the parties' son to the father, Jose Morel.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Louise and Jose Morel were married in 1977 in Miami, Florida. At that time, Louise was seventeen years old and Jose was nineteen. Their son, Nicholas, was born in 1977. Approximately one year after Nicholas' birth, Louise and Jose moved to Anchorage. They left Nicholas with Jose's parents in Florida until they were settled, which took about three months, and then brought Nicholas to Anchorage with them.

Shortly thereafter, Jose and Louise separated. Louise established her own residence in Anchorage with Nicholas. A few months later, Jose returned to his parents' house in Florida, taking Nicholas with him. Nicholas stayed with Jose until early 1979, at which time Louise brought him back to Anchorage. Louise was then living with Carl Shoemaker, her fiance (now husband). Louise and Carl Shoemaker have a son, Chad, who was one year old at the time of trial.

In February 1979, Louise filed for a divorce and custody of Nicholas. The matter came to trial in December 1980. Although Jose contested the award of custody to Louise, his contacts with Nicholas were minimal throughout this period.

At trial, the principal unresolved issue was whether custody of Nicholas should be awarded to Louise or Jose. The guardian ad litem for Nicholas, the court custody investigator, and the psychiatrist who examined the parties and Nicholas recommended that custody be awarded to Louise. Their recommendation was based upon Nicholas' strong attachment to his mother and half brother and upon Louise's capabilities as a parent. They believed awarding custody to Jose would not be in the best interests of Nicholas because of the lack of a parent-child relationship between the two and because of Jose's inability to fulfill his son's emotional needs.

Jose and his mother, Velgeca Morel, appeared at the trial. Both testified in favor of the court awarding custody to Jose.

The court decided that although Louise and Jose are both fit parents, it would be in the best interests of Nicholas to award custody to Jose, with reasonable and liberal rights of visitation granted to Louise. The court found that the evidence produced at trial tended to indicate that Jose had on occasion in the past inflicted physical abuse upon Louise, but that there was no evidence of any potential abuse by Jose upon Nicholas. The court also found that the evidence produced at trial revealed that Louise "has

a severe psychological problem that may affect her parenting abilities" and that Nicholas may have some type of language comprehension problem needing attention.

Louise filed this appeal and obtained an order granting her interim custody and child support for Nicholas. Louise argues that the superior court abused its discretion by finding that it was in the best interests of Nicholas to award custody to Jose. Jose has not responded to Louise's arguments or to the appeal. We agree that the superior court erred in awarding custody to Jose and for the reasons set forth below we reverse the judgment.

## II. THE CUSTODY DETERMINATION

■ When reviewing a superior court's decision on a custody matter, we give great weight to the court's experience and evaluation of demeanor testimony. *Horton v. Horton*, 519 P.2d 1131, 1132 (Alaska 1974), *citing Sheridan v. Sheridan*, 466 P.2d 821, 824 (Alaska 1970). The superior court's discretion, however, is not unlimited. As we stated in *Horton v. Horton*

> On review we must determine whether that discretion has been abused, perhaps by assigning too great a weight to some factors while ignoring others, perhaps by elevating the interests of one of the parties to the dispute above that of the child, perhaps by making a clearly erroneous finding with respect to some material issue, or perhaps in some other manner.

519 P.2d at 1132.

The standards for determining custody of a minor child are set forth in AS 09.55.205:

> The court shall determine custody in accordance with the best interests of the child. Neither parent is entitled to preference as a matter of right in awarding custody of the child. In determining the best interests of the child the court shall consider all relevant factors including:
> (1) the physical, emotional, mental, religious and social needs of the child;
> (2) the capability and desire of each parent to meet these needs;
> (3) the child's preference;
> (4) the love and affection existing between the child and each parent;
> (5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
> (6) the desire and ability of each parent to allow an open and loving frequent relationship between the child and his other parent.

The superior court's findings of fact and conclusions of law indicate that these factors, all of which weigh in favor of custody being awarded to Louise, were not given sufficient consideration.

■ The testimony presented at trial indicated that Jose has had little contact with his son since early 1979 and that the relationship between them was, at most, a weak one. The psychiatrist and the custody investigator testified that Jose would have difficulties fulfilling Nicholas' emotional needs, if he was able to do so at all. It was also apparent that Jose and the court expected that Jose's mother, rather than Jose, would primarily care for Nicholas if custody were awarded to Jose. The court stated, "And you, Mr. Jose, I have this observation to make, that if you didn't have your mother standing in the kitchen ready to perform all the necessary services the result might have been different." Yet, there was limited evidence in the record regarding the paternal grandmother's parenting abilities or her relationship with Nicholas. *Cf. Matson v. Matson*, 639 P.2d 298 (Alaska 1982).

■ In contrast to the limited evidence in support of an award of custody to Jose (and his mother), the testimony of Nicholas' guardian ad litem, of the custody investigator and of the psychiatrist established that Nicholas had a very good, loving relationship with his mother and that she is capable of fulfilling his needs and wishes to do so. Furthermore, the evidence indicated that Nicholas had a close relationship with his half brother, Chad. This is a factor that should have been considered by the court. We have held that consideration should be given to "the desirability of keeping the children of the family together so that they

may enjoy the normal condition of childhood of growing up together as brothers and sisters." *Rhodes v. Rhodes*, 370 P.2d 902, 903 (Alaska 1962). *See also Craig v. McBride*, 639 P.2d 303, 306–07 (Alaska 1982); *Nichols v. Nichols*, 516 P.2d 732, 736 (Alaska 1973). Even though Nicholas and Chad are only half brothers, rather than full siblings, we believe "that the nature of the child's existing relationships should be a significant factor in choosing his custodian." *Carle v. Carle*, 503 P.2d 1050, 1053 (Alaska 1972). *See also Craig v. McBride*, 639 P.2d at 306 n.9.

■ Finally, Nicholas had lived in a stable and good environment with his mother, stepfather and half brother. The guardian ad litem and the court custody investigator testified that Carl Shoemaker helped care for Nicholas, disciplined him appropriately, supported him financially and appeared to be a very responsible person. Evidence presented at trial indicates that Nicholas has been a happy, healthy, friendly, well-disciplined and neatly groomed child while living with Louise, Carl Shoemaker and Chad. We have continually stressed the desirability of maintaining continuity of care. *Horton v. Horton*, 519 P.2d at 1133 n.5; *Nichols v. Nichols*, 516 P.2d at 735–36; *Carle v. Carle*, 503 P.2d at 1053 & n.6. *See generally* Gruenberg & Mackey, *A New Direction For Child Custody in Alaska*, 6 U.C. L.A.-Alaska L. Rev. 34 (1976). Although this is legally an initial custody determination, from Nicholas' point of view, an award of custody to Jose would be a modification of the longstanding arrangement of living with his mother. It thus warrants consideration.

■ The superior court's finding that it would be in the best interest of Nicholas to award custody to Jose appears to have been based at least in part on Louise's history of psychiatric problems. The mental health of a parent is a proper topic of inquiry at a custody hearing; however, the basis of the custody determination is the best interests of the child and a parent's conduct is relevant only insofar as it has or can be expected to negatively affect the child. *Craig v.*

*McBride*, 639 P.2d at 306; *Bonjour v. Bonjour*, 566 P.2d 667, 669 (Alaska 1977); *Horutz v. Horutz*, 560 P.2d 397, 401 (Alaska 1977). It is undisputed that Louise has been in therapy since January 1980; she has benefitted from this treatment and plans to continue it. The three neutral witnesses who testified at the trial were aware of Louise's past difficulties and they focused on whether these problems would have any impact on her parenting ability. The unanimous opinion was that Louise's psychiatric problems do not have any significant impact on her capabilities to care for Nicholas; furthermore, these witnesses recommended that custody be awarded to Louise. Upon our review of the record, we conclude that the superior court was clearly erroneous in finding that Louise's problems may affect her parenting abilities.

Child custody determinations are among the most difficult and sensitive matters to be decided by the superior court. *Lacy v. Lacy*, 553 P.2d 928, 929 (Alaska 1976). The difficulty of evaluating emotional ties between persons contributes substantially to the burden placed on the court. In this case, three neutral witnesses were called upon to help the court evaluate the relevant factors. The unanimous opinion of these witnesses was that Louise could better fulfill Nicholas' needs than could Jose and that she should be awarded custody of Nicholas. We conclude that the superior court abused its discretion in awarding custody of Nicholas to Jose. We reverse that determination and order that custody be awarded to Louise. The visitation rights granted to Louise by the superior court should be granted to Jose and the investigations ordered by the court should continue.

The judgment of the superior court is REVERSED and REMANDED for modification in accordance with this opinion.

CONNOR, Justice, dissenting.

CONNOR, Justice, dissenting.

It is obvious that the superior court was confronted with a difficult problem in determining the custody question in this case.

Louise's psychiatric problems appear to be one of the main factors, among many, which led the court to its conclusion that custody should be awarded to Jose. The court provided for periodic investigations to be made as to the care that Nicholas would receive while in the custody of the father, and while in visitation status with the mother. Thus a means was provided whereby the custody determination could be reassessed as future needs became apparent.

From my reading of the record I am unable to conclude that in balancing a number of factors the superior court committed an abuse of discretion. Therefore, I would affirm.