NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| NICKI MELILLO, | ) | |
| | ) | Supreme Court No. S-15905 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-12-09465 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| JUSTIN SZYMANSKI, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1594 – August 10, 2016 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Eric A. Aarseth, Judge.

Appearances: Nicki Melillo, pro se, Anchorage, Appellant. Michelle V. Minor, Law Offices of Michelle V. Minor, P.C., Anchorage, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, and Bolger, Justices. [Fabe, Justice, not participating.]

## I. INTRODUCTION

Nicki Melillo and Justin Szymanski divorced in December 2013. The superior court distributed the marital estate and calculated child support. Nicki appeals pro se from the superior court's final order on these matters. We affirm the superior court on every issue raised.

---

\* Entered under Alaska Appellate Rule 214.

## II.    FACTS AND PROCEEDINGS

Nicki and Justin were married in 2004. They have two children, twins born in 2009. Nicki works as a dental hygienist. Justin works as a physical education teacher and has done construction work during some summers.

The family resided in Anchorage in 2012. In August Nicki told Justin she was taking the children to visit her parents in California; he remained in Anchorage. Later that month Justin was served divorce and custody papers for an action Nicki had filed in California. One week later Justin filed a parallel action in Alaska. Justin contended that Alaska was the children's home state for the custody determination and that California did not have personal jurisdiction over him for the divorce and division of marital property.

After consideration of Alaska and California statutes and a conference between the courts, the Alaska court assumed authority over the jurisdictional determination. The court's findings and conclusions on the jurisdictional issue noted that Nicki might have had "ulterior motives" for her California trip and had misrepresented to Justin the temporary nature of her stay. The court concluded that it had personal jurisdiction over both parties and subject matter jurisdiction over the divorce and custody dispute.

During the jurisdictional dispute Nicki kept the children in California through early December, when she was ordered to return them to Alaska. The children were in Justin's custody through late October 2013, and, during that time, they visited Nicki in California from mid-May through late August. Nicki relocated to Alaska in October and the parties began a 50/50 shared custody arrangement.

In November 2013 the parties divided many joint personal property items with court approval. Trial over the remaining marital estate, custody, and child support issues began in December, resuming over several separate days and concluding in

September 2014.  Nicki appeared pro se; Justin was represented by an attorney.  The trial court issued its final property, custody, and child support decree in March 2015.

Nicki appeals, continuing pro se.  Her primary assertions are that the trial court erred in allocating marital assets and debts and in declining to impute income to Justin in its child support calculations.

## III.   DISCUSSION

### A.   The Property Division[1]

"[A] trial court generally should begin with the presumption that an equal division of marital property is most equitable."[2]  The trial court here arrived at a generally equal distribution of the marital estate, concluding that "neither party provided compelling evidence that would require an unequal division of assets and debts."[3]  We

---

[1]   We review the equitable allocation of marital property for abuse of discretion, and it "will not be reversed 'unless it is clearly unjust.' " *McLaren v. McLaren*, 268 P.3d 323, 331-32 (Alaska 2012) (quoting *Harrelson v. Harrelson*, 932 P.2d 247, 250 (Alaska 1997)).  Under abuse of discretion review we "will not interfere" with the superior court's decision unless it is "arbitrary, capricious, manifestly unreasonable, or [it] stems from an improper motive." *Tobeluk v. Lind*, 589 P.2d 873, 878 (Alaska 1979).

[2]   *Wagner v. Wagner*, 299 P.3d 170, 180 (Alaska 2013) (quoting *Heustess v. Kelley-Heustess*, 158 P.3d 827, 833 (Alaska 2007)).

[3]   Nicki briefly argues that the trial court should have come to a different conclusion — specifically that she had greater need for and should have received a larger percentage of the marital estate — but she fails to engage or weigh any statutory factors that would permit consideration of an uneven allocation. *See* AS 25.24.160(a)(4); *Odom v. Odom*, 141 P.3d 324, 339-40 (Alaska 2006) (explaining the statutory factors used to examine whether a *fair allocation* of the marital estate may require an *unequal division*).

Thus Nicki's assertion appears to be nothing more than a request that we weigh the evidence differently than the trial court did.  "It is a function of the trial court, not the reviewing court, to judge the credibility of witnesses and to weigh conflicting
(continued...)

reject Nicki's argument that each individual marital asset and debt must be apportioned *exactly* 50% to her and 50% to Justin.

The marital assets were divided equitably; the trial court pragmatically assigned to either Nicki or Justin whole accounts or specific check values rather than dividing those items equally. Dividing specific items in half, as Nicki seems to propose, would have required closing accounts to divide them, and the court sought to avoid that result. The court explained that it was "seek[ing] to disentangle the parties financially as best as possible."

The trial court also divided the marital debts equitably; for expediency the trial court again assigned whole, discrete debt accounts to one party or the other. The court found that Nicki's student loans, acquired during the marriage, were marital debts. The court assigned all of Nicki's $30,766 remaining student loan debt, representing three separate accounts, to Nicki. To the extent Nicki argues it, an assignment of joint marital debt solely to one party is not an abuse of discretion.[4]

---

[3] (...continued)
evidence." *McLaren*, 268 P.3d at 331 (citing *Pam R. v. State, Dep't of Health & Soc. Servs.*, 185 P.3d 67, 71 (Alaska 2008)). Because the trial court is better suited to those two tasks, we "afford particular deference to factual findings based primarily on oral testimony." *Kristina B. v. Edward B.*, 329 P.3d 202, 207 (Alaska 2014) (first citing *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014); then citing *Nancy M. v. John M.*, 308 P.3d 1130, 1133 (Alaska 2013)). "We will generally accept the trial court's determination of the credibility of witnesses since it saw and heard the witnesses first hand." *McLaren*, 268 P.3d at 331 (citing *Dodson v. Dodson*, 955 P.2d 902, 907 (Alaska 1998)).

[4] "Courts . . . tend to award a [marital] debt to the party who benefit[t]ed most from it. This factor is an application of the basic equitable principle that the spouse who receives a benefit should be burdened with any corresponding liability." 2 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 6.99, at 526-27 (3d ed. 2005). The principle must apply prospectively as well. During the marriage Nicki and Justin
(continued...)

Because the superior court's overall marital estate division achieves an equitable result — an approximately 50/50 division of the marital estate — we affirm it.[5]

## B.     Child Support

Nicki asserts that the trial court should have imputed $20,000 to Justin for "seasonal work" in the child support computation. "[U]nder Alaska Civil Rule 90.3(a)(4) '[t]he court may calculate child support based on a determination of the potential income of a parent who voluntarily and unreasonably is unemployed or

---

[4]     (...continued)
arguably both benefitted from Nicki's education; once separated, only Nicki will continue to directly benefit from her specialized training. There was no error in assigning her those debt accounts.

Our review of the record suggests there may have been a calculation error in the division of the student loan marital debt, but one that would be equitably offset by another calculation error that otherwise would have held Nicki accountable to Justin for her share of the post-separation marital expenses.

[5]     In light of this holding we affirm the trial court's asset allocation of Justin's Merrill Lynch Retirement account, the GMC pickup truck, and the foreclosure checks; and its post-separation marital expenses allocation of "fees for the Anchorage School District health insurance," the "vet bills [Nicki] did not consent to," and the "fees for highlander condo." To the extent the court may have failed to divide a $614 medical bill possibly belonging to the children, the error is harmless because the amount is trivial and the estate division is not inequitable.

Nicki's complaint that the division favored Justin because the tables setting out the marital estate division were created by his attorney and were incorporated into the court's order without "check[ing] for accuracy and equality to both parties" is without merit. The court examined Nicki's proposals against Justin's but found her "challenge to those values was far outweighed by the credibility of [Justin's] testimony and supporting exhibits." The court produced its own tables, demonstrating deliberate scrutiny of both parties' proposals; we reviewed those tables on appeal. None of Nicki's allocation proposals are viable, and we find no error in the court's production of the tables.

underemployed.' "[6] "Potential income will be based upon the parent's work history, qualifications, and job opportunities."[7] "When deciding whether to impute income, the superior court should consider the *totality of the circumstances*."[8] Rule 90.3(a)(4) aims "to give courts *broad discretion* to impute income based on realistic estimates of earning potential in cases of voluntary and *unreasonable* unemployment or underemployment."[9]

The trial court determined that "[b]oth parties are capable of working . . . additional time"; Nicki fails to acknowledge that the same potential for imputing income to Justin existed for her.[10] These circumstances weighed into the court's decision to "decline[] to impute a summer income to the father and an additional 8 hour [workday per] work week to the mother."[11] Nothing in the record suggests that Justin — or Nicki — was *unreasonably* underemployed. The trial court did not abuse its discretion in declining to impute income to Justin, and we affirm its decision.[12]

---

**6** *Sharpe v. Sharpe*, 366 P.3d 66, 69 (Alaska 2016) (alteration in original) (quoting Alaska R. Civ. P. 90.3(a)(4)).

**7** Alaska R. Civ. P. 90.3(a)(4).

**8** *Kestner v. Clark*, 182 P.3d 1117, 1122 (Alaska 2008) (emphasis added) (citing Alaska R. Civ. P. 90.3 cmt. III.C).

**9** *Sharpe*, 366 P.3d at 69 (emphasis in original) (quoting *Beaudoin v. Beaudoin*, 24 P.3d 523, 530 (Alaska 2001)).

**10** Nicki typically worked only four days per week; the record reflects that Justin sought to impute to Nicki an additional 8-hour workday per week at $46 per hour.

**11** The order omitted the "workday per" language, resulting in a misstatement of Justin's request.

**12** Nicki contends on appeal that the trial court made "findings during trial" that could support her claim for imputation. Our review of the record does not demonstrate this.

### C.    Nicki's Other Contentions On Appeal

#### 1.    It was not error to exclude the fees Justin paid his attorneys from income or marital asset calculations.[13]

Nicki argues that Justin paid off a debt of approximately $50,000 that was not considered by the superior court as income or a marital asset. Following Nicki's loss of the custody jurisdiction dispute, the California court entered judgment against her in favor of Justin to directly pay his attorney's fees. Justin later paid the fees in full and expected that Nicki would repay him.

At trial Nicki suggested that Justin would have been unable to pay the roughly $50,000 judgment unless he had greater income than reported or had been hiding assets during the marriage. Justin testified that the funds were loaned to him by his father, whom Justin was expected to repay. The court explained, "if it's truly a loan, that he has to pay back . . . then it's not going to be income." Based on our review of the record, Nicki failed to establish that the $50,000 was actual income for Justin or that he had hidden marital assets, and the court did not err in excluding the funds from consideration.

#### 2.    It was not error to hold Justin harmless for costs and fees associated with debt he had cosigned.

Nicki claims the trial court erred by requiring her to hold Justin harmless for the student loan debt allocated to her in the marital property division. She contends that an order holding Justin harmless for the debt was "without reason," apparently arguing that having cosigned the loans, Justin should remain liable. As previously discussed, the marital estate division — including assigning 100% of the student loan

---

[13]    "The superior court's identification of property available for distribution is reviewed for clear error." *Dundas v. Dundas*, 362 P.3d 468, 473-74 (Alaska 2015). But "[i]dentification of some property may present issues of law that are reviewed de novo." *Id.* at 474.

debt to Nicki — was not improper.[14] To the extent Nicki suggests error in holding Justin harmless for cosigned loans, her argument is without merit.

The trial court's hold-harmless order is a sound means of protecting Justin from potential liability. "When [a] court allocates marital debts, it does so only as between the parties. The court has no authority to affect the rights of the spouses' creditors . . . ."[15] "The creditor [still] has an absolute legal right to look to both spouses for repayment of a joint debt, and it cannot be forced to give up that right simply because the spouses are being divorced."[16] Accordingly, an order to hold harmless in Justin and Nicki's situation is judicious:

> Because allocation of a joint debt to one spouse does not destroy the right of a creditor to collect from the other, *it is wise practice to order the spouse to whom the debt is allocated to hold the other harmless from future liability*. If the spouse to whom the debt is allocated fails to pay it, that spouse must compensate the other for any harm suffered if the creditor chooses to enforce that debt against the other spouse.[17]

---

[14] *See supra* Section III.A.

[15] TURNER, *supra* note 4, at 529-30.

[16] *Id.* at 306 (Supp. 2015-2016).

[17] *Id.* (emphasis added) (citation omitted) (citing *Gardner v. Gardner*, 294 P.3d 600, 612 (Utah App. 2012) ("[A] spouse enforcing a hold-harmless can recover not only the amount of the debt, but also damages for collateral harm, such as damage to that spouse's credit rating, if the damages are proven with reasonable accuracy." *Id.* (citing *Gardner* 294 P.3d at 612 )).

*Dodson v. Dodson*, 955 P.2d 902, 913 (Alaska 1998), demonstrates our inclination toward upholding a hold-harmless order in the divorce context. There the court had assigned the husband certain marital debts, including the mortgage on the marital residence. *Id.* The court ordered the husband to purchase life insurance naming
(continued...)

The trial court's order was not "without reason" as Nicki contends; the possibility of creditors seeking payment from Justin was real. After separation, when Nicki stopped paying the student loans, a creditor began contacting Justin seeking payment. Nicki testified that "[Justin was] a cosigner . . . that's why [the creditor] . . . sought payment from him." Nicki also stated that the creditor pursued Justin once Nicki entered bankruptcy proceedings and that Justin "had every opportunity to make payments in order to prevent damage either to his credit or accrue interest on the loans." Because Justin cosigned the loans, the hold-harmless requirement is necessary to safeguard him in the event Nicki neglects repaying debts that are now solely her responsibility.

---

[17]     (...continued)
the wife as beneficiary as protection from those debts for which she remained legally liable. *Id.* On appeal the husband contended that the court abused its discretion because some of the debts were already adequately secured. *Id.* He argued that there was already "more than sufficient equity to protect [the parties] from any personal liability" for the residence and that the mortgage — which was to be paid from the proceeds when the home sold — should not require insurance protective of the wife. *Id.*

But we observed that "[t]rial courts have discretion to require a party to provide security for a marital debt, whether by insurance or otherwise, to ensure that the party actually pays the marital debts allocated." *Id.* (citing BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 6:29, at 464-65 (2d ed. 1994)). We upheld the life insurance requirement as security to offset the wife's potential liability, but concluded that the superior court erred in requiring the husband to insure for the entire remaining mortgage debt because of the equity. *Id.* at 914. We remanded the case for a more accurate accounting of the wife's potential liability. *Id.* at 915. We affirmed requiring the husband to secure the debts through life insurance in *Dodson*, and we affirm the hold-harmless order here for similar reasons.

### 3. Nicki's accusation that the court and opposing attorney "constant[ly] discredit[ed]" her is not a valid legal argument.

Nicki's bare allegation that the trial court and Justin's counsel were "constantly discrediting" her fails to state a valid legal argument.[18] And our review of the trial demonstrates that the court considerately and appropriately assisted Nicki with trial procedures. Although Justin's attorney expressed frustration with Nicki's conduct and testimony at trial, she did not act outside the bounds of professionalism.

### 4. The contention that Nicki's arrears were inaccurately calculated is waived for lack of briefing.

Nicki appears to assign error to the trial court's child support calculation that resulted in her owing back payments. Nicki's contentions are unclear; she suggests that "[f]igures used to calculate arrears for child support were not accurate and favored [Justin]" and that "arrears . . . [were] inaccurately calculated with bias towards [Justin]." She asserts that she and Justin each shared custody for an "interim" period, "with each parent providing equally for the children," and that therefore she either does not owe the arrears or the calculated arrears are too high.[19] Nicki cites neither law nor evidence from

---

[18] *See A.H. v. W.P.*, 896 P.2d 240, 243 (Alaska 1995) (concluding that even for pro se litigants, "superficial briefing and the lack of citations to any authority constitutes abandonment of [a] point on appeal").

[19] Along with this argument Nicki claims "none of the school tuition and/or childcare [that Nicki paid in California] is listed in the debt tables." Insofar as Nicki conflates a connection between the arrears issue and Justin not being ordered to reimburse the children's California preschool tuition and childcare, the relationship is not apparent. The trial court addressed the California preschool and childcare issue, concluding that Nicki, having unreasonably and unilaterally relocated the children to California where she then filed for divorce and custody, incurred those expenses as a result of her "own poor choice." The court explained it was an "unnecessary duplication of child care expenses" Justin continued paying in Alaska and requiring him to reimburse Nicki "would be inequitable." Further, the court reasoned that Nicki "did not present

(continued...)

the record supporting an argument for reducing her arrears.

"Where a point is given only [a] cursory statement in the argument portion of a brief, the point will not be considered on appeal."[20] "[E]ven when a pro se litigant is involved, an argument is considered waived when the party 'cites no authority and fails to provide a legal theory' for his or her argument."[21] Because Nicki fails to support her contention, it is waived for inadequate briefing. We affirm the trial court's arrears calculation.

## IV. CONCLUSION

We AFFIRM the trial court's decision on all issues raised on appeal.

---

[19]   (...continued)
evidence that she in fact incurred these expenses and if so, that they were not or could not have been discharged in her bankruptcy." We agree with the trial court regarding these expenses.

[20]   *A.H.*, 896 P.2d at 243 (original alteration omitted) (quoting *Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n.3 (Alaska 1991)).

[21]   *Gilbert v. Sperbeck*, 126 P.3d 1057, 1062 (Alaska 2005) (quoting *Peterson v. Ek*, 93 P.3d 458, 464 n.9 (Alaska 2004)).